IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DANIELLE WADE,  </br>         Plaintiff,  </br>  </br>   v.  </br>  </br> CITY OF CHICAGO, Chicago Police Officers MAHMOUD SHAMAH and RICHARD DORONIUK, and other UNKNOWN POLICE OFFICERS,  </br>  </br>         Defendants. | ) FILED: MAY 28, 2008  </br> ) 08CV3063    PH  </br> )  </br> ) JUDGE PALLMEYER  </br> ) MAGISTRATE JUDGE NOLAN  </br> )  </br> )  </br> )  </br> )  </br> )  </br> )  </br> ) JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, DANIELLE WADE, ("Plaintiff"), by one of her attorneys, Jeffrey B. Granich, makes the following complaint against Defendant CITY OF CHICAGO ("Defendant City"), Chicago Police Officers MAHMOUD SHAMAH and RICHARD DORONIUK, ("Defendant Officers"), and other UNKNOWN CHICAGO POLICE OFFICERS ("Unknown Officers"):

### JURISDICTION & VENUE

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. '' 1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. ' 1391(b). All parties reside in this judicial district, and/or the events giving rise to the claims asserted in this complaint occurred within this district.

### PARTIES

4. Plaintiff is a thirty year-old resident of Chicago, Illinois.

5. Defendant Officers were at all relevant times, Chicago police officers employed by Defendant City, and acted under color of law and within the scope of their employment with Defendant City.

1

6. Defendant City is a municipal corporation and public entity incorporated under the laws of Illinois.

**FACTS**

7. On the evening of November 16, 2003, Plaintiff borrowed a friend's car to go to the store.

8. Plaintiff obeyed all traffic laws as she drove to the store, nevertheless, Defendant Officers pulled her over near the intersection of Laramie and Harrison Streets in Chicago, Illinois.

9. Plaintiff produced a valid driver's license to Defendant Officers. One of Defendant Officers then searched Plaintiff in an inappropriate manner, touching her genital area. When Plaintiff protested, one of Defendant Officers told her, "shut up bitch, before I put a stiff dick in your mouth to shut you up, " or words to that effect.

10. At some point, Defendant Officers then told Plaintiff that the car she was driving had been reported stolen.

11. Plaintiff had the car keys and there was no damage to the vehicle or other visible indications that the car she had borrowed was stolen.

12. Plaintiff told Defendant Officers that she had been at a party and that she had just borrowed the car to run out to the store. She told them she didn't know the car was stolen.

13. Defendant Officers arrested both Plaintiff and her passenger and transported them back to a police station.

14. Defendant Officers then lied to a prosecutor in order to charge Plaintiff with a felony; fabricating a false confession by Plaintiff in which she admitted knowledge that the car was stolen.

15. Defendant Officers created false police reports regarding Plaintiff's arrest and her statement concerning the vehicle.

16. Ultimately, Defendant Officers caused Plaintiff to be charged with the felony offense of Possession of a Stolen Motor Vehicle.

17. Prior to trial, the Assistant State's Attorney offered to reduce Plaintiff's felony charge to a misdemeanor in exchange for a guilty plea and a sentence of one year in jail. Because the charges were false, Plaintiff refused the offer and went to trial, trusting that the truth would come out.

18. Plaintiff proceeded to a bench trial on April 19, 2005, and was found guilty based on the

testimony of Defendant Officer SHAMAH, who provided the only inculpatory evidence against Plaintiff at her trial.

19. On May 18, 2005, Plaintiff was sentenced to six years imprisonment in the Illinois Department of Corrections.

20. Sometime prior to Plaintiff's trial, on information and belief, Unknown Officers became aware of a pattern of misconduct by Defendant Officers, but this was never disclosed to prosecutors or to Plaintiff.

21. Sometime prior to June 2006, the F.B.I. began investigating the allegedly criminal activities of Defendant Officers.

22. On October 25, 2006, Defendant Officers were indicted in federal court for allegedly stealing thousands of dollars they believed belonged to drug dealers (when in fact it belonged to the federal government and Defendant Officers were caught in a sting operation).

23. On July 27, 2007, having served her entire sentence, Plaintiff was released from prison.

24. Subsequently, the Circuit Court of Cook County granted Plaintiff's motion to vacate her conviction and Assistant State's Attorneys dismissed the charges against Plaintiff.

25. Ultimately, Plaintiff spent nearly four years in custody as a result of the false charges placed against her by Defendant Officers.

26. Plaintiff, who had been working two jobs at the time of her arrest, lost them both.

27. Plaintiff was separated from her three-year old daughter while she was in prison causing financial burden on her family and emotional harm to both Plaintiff and her daughter.

28. Plaintiff's brother died three days after she was finally released and her father died one month after her release. Plaintiff spent the last years she had with these immediate family members falsely incarcerated as a result of Defendant Officers' misconduct, and separated from her family.

29. Defendant Officers' misconduct has caused Plaintiff to suffer severe emotional harm, unjustified incarceration, as well as financial and physical damages.

**Count I: Due Process Claim**

30. Plaintiff restates paragraphs 1-29 as if fully restated here.

31. As described in the preceding paragraphs, Defendant and Unknown Officers deprived Plaintiff of a fair trial by withholding material exculpatory evidence in violation of the

Fourteenth Amendment to the United States' Constitution.

32. As a direct and proximate result of Defendant Officers' misconduct, Plaintiff has suffered harm, including physical, emotional, and pecuniary damages which will be proven at trial.

WHEREFORE, Plaintiff prays judgment against Defendant Officers in a fair and just amount sufficient to compensate Plaintiff for the injuries she has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count II -- §1983 Conspiracy

33. Plaintiff restates paragraphs 1-32 as if fully restated here.

34. Defendant Officers either impliedly or expressly conspired to violate Plaintiff's constitutional rights as described above.

35. On information and belief, supervisory members of the Chicago Police Department were aware of the misconduct of Defendant Officers either before or during her prosecution and incarceration. These UNKNOWN OFFICERS conspired to cover up this misconduct and withheld this information from prosecutors and from Plaintiff.

36. As a direct and proximate result of this conspiracy, Plaintiff suffered damages as described more fully above.

WHEREFORE, Plaintiff prays judgment against Defendant Officers in a fair and just amount sufficient to compensate Plaintiff for the injuries she has suffered, plus a substantial sum in punitive damages, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count III: Policy Claim

37. Plaintiff restates paragraphs 1-36 as if fully restated here.

38. Defendant City allowed and encouraged the misconduct described in preceding paragraphs through the policies and practices of its police department:

   a. As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

   b. As a matter of both policy and practice, the Chicago Police Department facilitates the

       type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of misconduct are aware that citizen allegations will not be fully investigated and discipline is almost never imposed, even where the officer has engaged in wrongdoing;

    c.    As a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

    d.    Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

    e.    The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

    f.    As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse, which might develop over the course of a police officer's career;

    g.    As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. Regardless of the number of times an officer is accused of the same misconduct, the Office of Professional Standards ("O.P.S.") is forbidden by the City from considering those allegations if they are deemed "unsustained"; and

    h.    Defendant City has circumscribed its own ability to discipline and terminate its employees through its contract negotiations with the police union, in that the system which is in place for administrative review of officer misconduct and discipline is so heavily weighted towards the officer that any discipline that is imposed is more often than not overturned or reduced during the administrative review process.

39.    As a proximate result of Defendant City's policy and practice, Defendant Officers' were able to violate Plaintiff's constitutional rights as described in preceding counts, causing Plaintiff to suffer physical and emotional damages which will be proven at trial.

WHEREFORE, Plaintiff prays judgment against Defendant City in a fair and just amount sufficient to compensate Plaintiff for the injuries he has suffered, as well as costs, attorney's fees, and such other relief as is just and equitable.

### Count IV -- Malicious Prosecution

40. Plaintiff restates paragraphs 1-29 as if fully restated here.

41. As more fully described above, Defendant Officers willfully and wantonly initiated criminal proceedings against Plaintiff, and/or caused the criminal proceedings to continue against Plaintiff, without probable cause to believe she had committed a crime, in violation of Illinois law.

42. With malice, willfulness, and/or reckless indifference to the rights of Plaintiff, Defendant Officers created false and/or inaccurate police reports, gave false accounts regarding their investigation, fabricated evidence, and/or offered false testimony during the criminal proceedings in the case and/or to the prosecutors.

43. As a proximate result of Defendant Officers' misconduct, Plaintiff suffered financial, emotional and physical damages as described in preceding paragraphs.

44. The criminal proceedings at issue in this case were terminated in Plaintiff's favor, in a manner indicative of innocence.

45. Illinois law provides that public entities, such as Defendant City, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

46. At all relevant times, Defendant Officers were agents of Defendant City, and acting within the scope of their employment as a Chicago Police Officers. Defendant City, therefore, is liable as principal for all torts committed by Defendant Officers.

WHEREFORE, Plaintiff prays judgment against Defendant Officers and Defendant City in a fair and just amount sufficient to compensate Plaintiff for the injuries she has suffered, as well as costs, attorney's fees, and such other relief as is just and equitable.

**Plaintiff demands a trial by jury.**

DANIELLE WADE, Plaintiff


By       /s/ Jeffrey B. Granich_____
        Attorney for Plaintiff

JEFFREY B. GRANICH
Law Offices of Jeffrey B. Granich
53 W. Jackson Blvd.
Suite 840
Chicago, IL 60604
(312) 939-9009
A.R.D.C. No. 6207030