**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DANIELLE WADE,** ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 3063 |
| ) | |
| **CITY OF CHICAGO, Chicago Police** ) | Judge Rebecca R. Pallmeyer |
| **Officers MAHMOUD SHAMAH and** ) | |
| **RICHARD DORONIUK, and other** ) | |
| **UNKNOWN POLICE OFFICERS,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Danielle Wade filed a complaint against the City of Chicago, Police Officers Mahmoud Shamah and Richard Doroniuk, and other unknown officers, alleging that the Defendants were liable for several constitutional violations that resulted in Plaintiff's conviction for possession of a stolen vehicle. Plaintiff alleges that she served her entire sentence, spending nearly four years in custody, before the conviction was vacated. The complaint does not explain why Plaintiff's conviction vacated, but the reason may be related to an FBI investigation of Shamah and Doroniuk that ended with the officers' federal convictions for conspiracy. Before the court are motions by attorneys Torreya Hamilton and David Selmer to file appearances as counsel for Plaintiff. N.D. ILL. L.R. 83.17. Defendants Shamah and Doroniuk oppose the motions,[1] arguing that Hamilton and Selmer are disqualified from representing Plaintiff based on their recent employment by the City of Chicago as Assistant Corporate Counsel—Hamilton left in September 2006 and Selmer in September 2008. Defendants argue that Selmer is disqualified because he previously represented Defendants Doroniuk and Shamah in a substantially related matter when he worked for the city and that Hamilton is disqualified based on her current professional association with Selmer.

---

[1] Defendant City of Chicago did not join Shamah and Doroniuk's opposition to the motions for leave to appear. The court's reference to Defendants throughout this order refers to Defendants Shamah and Doroniuk only.

**A.    David Selmer**

The court's local rules, modeled after the ABA Model Rules of Professional Conduct, address appearance and disqualification issues. Under Local Rule 83.17, a new attorney who is not part of the same firm as current counsel may not file an appearance without leave of the court. Obviously, the court will not grant Selmer leave to appear if, as Defendants argue, he is disqualified from representing Plaintiff. Local Rule 83.51.9(a) governs representation by a lawyer who previously represented a client in a related matter:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure.

It is undisputed that Plaintiff's interests are materially adverse to the interests of Defendants, Selmer's former clients, and that Defendants have not consented to Selmer's representation. The only question is whether the case in which Selmer represented Defendants is "substantially related" to this case.

To determine whether two cases are "substantially related," the court considers "'whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation.'" *LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 255 (7th Cir. 1983) (*quoting Cannon v. U.S. Acoustics Corp.,* 398 F. Supp. 209, 223 (N.D. Ill. 1976)). That determination entails a three-step inquiry:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Id.* at 255-56. Although the Seventh Circuit has not had occasion to discuss this process since 1983, it is in widespread use in the district court. *E.g., Scala's Original Beef & Sausage Co. v. Alvarez*, No. 09 C 7353, 2009 WL 4823916, at *2 (N.D. Ill. Dec. 10, 2009) (Dow, J.); *Misiak v. Morris*

*Material Handling, Inc.*, No. 07 C 6330, 2008 WL 4874178, at *2 (N.D. Ill. July 10, 2008) (Darrah, J.); *Safe-T-Products, Inc. v. Learning Resources, Inc.,* No. 01 C 9498, 2002 WL 31386473, at *3 (N.D. Ill. Oct. 23, 2002) (Pallmeyer, J.).

Selmer represented Defendants Doroniuk and Shamah from September 2006 to April 2007 in *Hegwood v. Leach*, No. 04 C 7220. *Hegwood*, Dkt. No. 96 (Attorney Appearance); Dkt. No. 114 (Agreed Order of Dismissal). In that 2004 lawsuit, Plaintiff Talman Hegwood alleged that in December 2003, Doroniuk, Shamah, and four other police officers used excessive force, arrested him without cause, and framed him for cocaine possession. *Hegwood*, Dkt. No. 51 (Amended Complaint). The case eventually settled. *Hegwood*, Dkt. No. 112 (Release and Settlement Agreement). The allegations in Plaintiff Wade's complaint—that she was unlawfully arrested in November 2003 and framed by Defendants Doroniuk and Shamah—are substantially similar to Hegwood's. Plaintiff did not file her complaint until May 2008, more than a year after Hegwood's case had settled, but a significant portion of the conduct in each case is alleged to have occurred only weeks apart.

The second step of the inquiry is easily answered: the court finds it reasonable to infer that an attorney representing police officers accused of civil rights violations would learn confidential information about, among other things, the city's defense strategy in the course of defending the officers and ultimately negotiating a settlement agreement on their behalf. Selmer has stated that he never communicated with Doroniuk and Shamah and never learned any client confidences, (Selmer Aff., Selmer's Ex. A, ¶¶ 2-3), but whether confidential information was actually shared is irrelevant. *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983).

Moving to the third step, the court concludes that the confidential information that Selmer presumably learned about the city's strategy for defending Doroniuk and Shamah is relevant to the issues raised by the present lawsuit. Selmer argues that because the two cases involve only the same type of transaction rather than the same exact transaction, they are not substantially related.

3

Selmer is correct that, as explained in the commentary to Rule 83.51.9, "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." The court is not satisfied that this case is "wholly distinct" from the previous one, however. The cases do involve different transactions, but the similarity between the allegations and their proximity in time are simply too close for comfort: Wade was arrested on November 16, 2003 and Hegwood on December 3, 2003; police stopped them only a few blocks apart in Chicago's Austin neighborhood; both were arrested in the evening; both plaintiffs alleged that Defendants used excessive force against them; and both plaintiffs alleged that Defendants fabricated evidence and gave false testimony in order to frame them, Wade for possession of a stolen car and Hegwood for possession of cocaine. *Wade*, Dkt. No. 1 (Complaint); *Hegwood*, Dkt. No. 51 (Amended Complaint). Thus, the court finds that the two cases are substantially related.

Selmer argues that he can rebut the presumption of shared confidences created by the court's finding that the two cases are substantially related. The Seventh Circuit has recognized the possibility of rebutting the presumption in the situation where a member of a law firm moves to a new firm that seeks to represent an adversary of the former firm. *Cromley v. Board of Education of Lockport Township High School District 205*, 17 F.3d 1059, 1064 (7th Cir. 1994); *United States v. Goot*, 894 F.2d 231, 234-35 (7th Cir. 1990); *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983); *LaSalle Nat'l Bank*, 703 F.2d at 257. Local Rule 83.51.10, discussed below, allows for that possibility. With respect to an individual lawyer who previously represented a client and seeks to represent an adversary against the client in a substantially related matter, though, Local Rule 83.51.9(a) says nothing about rebutting the presumption that client confidences were shared. For an entire firm that changes sides, the Seventh Circuit has held that the presumption is irrebuttable. *Analytica,* 708 F.2d at 1267; *accord United States v. Stiger*, 413 F.3d 1185, 1196 (10th Cir. 2005) (holding that presumption of shared confidences is irrebuttable where attorney-client relationship

4

existed between party seeking disqualification and opposing counsel and present litigation is substantially related to prior representation).

Even if the court were to recognize the 83.51.9(a) standard as a presumption rather than a rule, Selmer would still be disqualified because the evidence he cites is not enough to rebut the presumption. Selmer's former colleagues have stated that they communicated with him regarding the defense of Doroniuk and Shamah in the Hegwood case and in other unidentified cases against them. (Hader Aff., Def's Ex. I, ¶¶ 4-6; Doi Aff., Def's Ex. J, ¶¶ 4-6.) Selmer disputes those statements in his brief. (Selmer's Br., at 9.) That there is some doubt about whether confidential strategy was shared is not sufficient to rebut the presumption; "any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification." *LaSalle Nat'l Bank*, 703 F.2d at 257. Accordingly, the court concludes that Selmer is prohibited from representing Plaintiff.

**B.     Torreya Hamilton**

Assuming that Selmer and Hamilton are associates of the same firm, under Local Rule 83.51.10, Selmer's disqualification is imputed to Hamilton unless Selmer has no confidential information material to the case or Selmer "is screened from any participation in the matter and is apportioned no specific share therefrom." N.D. ILL. L.R. 83.51.10(b). Plaintiff argues that this standard is met here and that, despite Selmer's association with Hamilton, the court should grant Hamilton's motion for leave to appear on the Plaintiff's behalf. In an affidavit, Hamilton attests to the following: Hamilton is a solo practitioner who works with other lawyers on a case-by-case basis; Selmer is not an employee of the Hamilton Law Office; Hamilton became aware of Selmer's potential conflict only hours after she asked him to work on the case; and since that time Selmer has not participated in the case—Selmer has never shared any confidential information nor has he ever had access to Plaintiff's case file. (Hamilton Aff., Hamilton's Ex. A, ¶¶ 5, 10-15.) Selmer's account is in accord with Hamilton's. (Selmer Aff., Hamilton's Ex. B, ¶¶ 8-10.) It appears that

5

Selmer and Hamilton's association does not constitute a firm, but even assuming that it does, the court finds that Selmer has been adequately screened from participation in the litigation. An adequate screening method must "'effectively insulate against any flow of confidential information from the 'infected attorney' to any other member of his present firm.'" *Cromley*, 17 F.3d at 1065 (*quoting Schiessle*, 717 F.2d at 421). Beyond not discussing the matter, as Hamilton and Selmer are already doing, there is nothing more that two lawyers could do to satisfy that standard. Accordingly, Hamilton is not prohibited from representing Plaintiff.

For the foregoing reasons, David Selmer's Motion for Leave to File an Appearance as Counsel for Plaintiff [54] is denied and Torreya Hamilton's Motion for Leave to File an Appearance as Counsel for Plaintiff [51] is granted.

ENTER:

Dated: February 11, 2010

_____
REBECCA R. PALLMEYER
United States District Judge